UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| SUPERIOR SEAFOODS, INC., SUPERIOR SEAFOODS, L.L.C., and QUALITY FINER FOODS, INC., | Civil No. 06-2543 (JRT/AJB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| TYSON FOODS, INC., CONAGRA GROCERY PRODUCTS COMPANY, L.L.C., and CONAGRA FOODS, INC., | |
| Defendants. | |

Marcy S. Wallace, **COX GOUDY MCNULTY & WALLACE**, 100 North Sixth Street, Suite 676A, Minneapolis, MN 55403, for plaintiffs.

Eric A. Prager, **DARBY & DARBY PC**, 1191 Second Avenue, Seattle, WA 98101; and Amy J. Benjamin, **DARBY & DARBY PC**, 805 Third Avenue, New York, NY 10022; Joseph J. Mihalek, **FRYBERGER BUCHANAN SMITH & FREDERICK, PA**, 302 West Superior Street, Suite 700, Duluth, MN 55802, for defendant Tyson Foods, Inc.

Patrick C. Stephenson and John P. Passarelli, **KUTAK ROCK, LLP**, 1650 Farnam Street, Omaha, NE 68102 and Joseph J. Roby, Jr., **JOHNSON KILLEN & SEILER**, 230 West Superior Street, Suite 800, Duluth, MN 55802, for defendants Conagra Grocery Products Company and Conagra Foods, Inc.

Plaintiffs bring this action to set aside the Consent Order entered in a related action before this Court, *Kemp v. Tyson*, Civil No. 5-96-173 (D. Minn. May 22, 2001). Plaintiffs allege fraud upon the Court or, in the alternative, mistake as a basis for their

claim. Defendants filed motions to dismiss. For the following reasons, the Court denies the motions, except with respect to defendant ConAgra Foods, Inc.

**BACKGROUND**

In 1987, Louis Kemp sold his line of surimi-based products[1] to Oscar Mayer. As part of the sale, Kemp transferred to Oscar Mayer the trademarks KEMP, KEMP's and KEMP's & DESIGN for use in connection with the product line. A short time later, Kemp agreed to permit Oscar Mayer to register and use the trademarks LOUIS KEMP and LOUIS KEMP SEAFOOD COMPANY ("the Marks") for marketing "surimi-based seafood products and certain accessory products." (Am. Comp. ¶ 12.) This agreement was initially oral, but was subsequently memorialized in Amendment 1 to the 1987 sale contract. In 1991, Kemp sold the rights he had retained under the 1987 contract to plaintiffs Superior Seafoods, Inc. and Superior Seafoods, L.L.C. Oscar Mayer, through its parent company Kraft, later sold the product line and the Marks to defendant Tyson Foods, Inc. ("Tyson"), which in turn sold it to Bumble Bee Seafoods, Inc. ("Bumble Bee"). Bumble Bee has since been acquired by defendant ConAgra Foods, Inc. and then merged into defendant ConAgra Grocery Products Company, L.L.C.

Litigation between these parties began in 1995. On August 15, 1995, Kemp, Superior Seafoods, Inc., Superior Seafoods, L.L.C., and others sued Oscar Mayer, Kraft, Tyson, and others in California state court. The complaint asserted claims that arose out of the sale of the Marks by Oscar Mayer to Tyson. In late 1995, Kemp, through his

---

[1] Surimi is a low-fat processed fish product.

company plaintiff Quality Finer Foods, Inc. ("Quality"), began to market a line of wild rice based products under the Louis Kemp name.  Bumble Bee objected to Kemp's use of the Louis Kemp name on a number of grounds.

In 1996, while the California litigation was still pending, Kemp brought an action in Minnesota state court for a declaratory judgment delineating the parties' rights to use the Louis Kemp name.  Kemp also brought tortious interference and unfair competition claims against Tyson and Bumble Bee.  On June 14, 1996, Tyson removed the action to this Court and asserted counterclaims for trademark infringement and dilution against Kemp.

Over the next few years, litigation proceeded on many fronts, including state and bankruptcy courts in California, as well as this Court.  On May 5, 1998, this Court issued an order suspending the Minnesota litigation pending resolution of the various California cases.  *Kemp v. Tyson Seafood Group, Inc.*, 19 F. Supp. 2d 961, 966 (D. Minn. 1998).  In 1999, the parties involved reached a global settlement of the California cases.  As part of the global settlement, Kraft, Kemp, Superior Seafoods, Inc., Superior Seafoods, L.L.C., and Quality entered into a letter agreement.  Among other things, they agreed that the Marks were valid "to use only on surimi-based seafood products and such other seafood and fish accessory products within the natural zone of product line expansion."  (Wallace Aff. Ex. P.)

After the global settlement, the Minnesota suit resumed and Minnesota counsel tried to eliminate from the Minnesota case those issues that had been resolved in the global settlement.  The parties considered a draft consent order on August 24, 1999.  The

draft stated that Tyson owned all rights in the Marks. A lawyer for plaintiffs in the underlying action, Mark Pilon, suggested language that would have explicitly limited Tyson's use of the Marks to surimi. A lawyer for Tyson said that he had accepted all of the changes suggested by Pilon. Based on this representation, Pilon signed the stipulation, but the surimi limitation was not actually made to the draft. Kemp refused to sign the draft order that was attached to the stipulation, and negotiations continued.

On May 12, 2000, Tyson and Bumble Bee moved to dismiss some of the claims in the Minnesota action, arguing that the claims were precluded by the California litigation, or alternatively, that the consent degree should be enforced because Pilon signed it. Tyson and Bumble Bee also filed a motion for summary judgment, and a motion for summary adjudication of the claims of tortious interference and unfair competition. Tyson and Bumble Bee acknowledged in their motions that all they had won in the California litigation was the right to use the Marks on surimi-based products. Kemp, Superior Seafoods, Inc., and Quality filed a motion for partial summary judgment.

On December 7, 2000, the Court held oral argument on these motions. Ethan Horwitz argued for Tyson and Bumble Bee. At oral argument, the Court asked Horwitz whether his clients were seeking the right to use the Marks on all food products. Horwitz said, "We are not seeking the right to use Louie Kemp on all food products." (Wallace Ex. RR at 21.) Horwitz indicated that the rights were defined by the California judgment and that the consent order "takes care of that." (*Id.* at 22.) The Court stated that the consent order was a "little bit unclear" and asked for more clarification about what claims it covered. (*Id.* at 27.) Horwitz's answer again pointed the Court to the consent order.

On March 31, 2001, the Court granted Tyson and Bumble Bee's motion for summary adjudication on the claims of tortious interference and unfair competition and denied the other motions for summary judgment.  The Court found that while Amendment 1 to the 1987 sales contract did not grant Kemp an affirmative contractual right to use the Marks for non-surimi based products, it also did not unambiguously grant Tyson or Bumble Bee a contractual right to prevent Kemp from using the Marks on non-surimi products. The Court also noted "[i]t is clear that defendants acquired only a limited right to use and register LOUIS KEMP and LOUIS KEMP SEAFOOD COMPANY in connection with surimi-based seafood and related products." *Kemp v. Tyson Foods*, 2001 WL 391552, at *5 (D. Minn. Mar. 31, 2001).  The Court required the parties to submit a signed stipulation on the consent order for the Court's signature.

On May 3, 2001, John D. Kelly, who represented Kemp, Superior Seafoods, Inc., and Quality, wrote to Kemp saying that the consent judgment as presented to him for his signature omitted language that would limit Tyson's rights to the Marks to surimi and related products.  The next day, Kelly wrote again about his conversation with a lawyer for Tyson, Kandis Kahn.  Kelly reported that Kahn refused to reinstate the surimi limitation.  Kelly told Kemp that this Court's recent order clarifies the legal rights of the parties, and indicated that it therefore did not matter that the consent order was not explicit. On May 15, 2001, Kelly signed the stipulation for the consent order.  In a cover letter to the Court, Kelly stated that the consent order was subject to "the Court's determination that 'defendants acquired only a limited right to use and register LOUIS

KEMP and LOUIS KEMP SEAFOOD COMPANY in connection with surimi-based seafood and related products.'" (Wallace Aff. Ex. AA.)

On May 22, 2001, this Court signed a stipulation and order granting the Consent Order. The Consent Order referred to the California decisions and the global settlement. Based on the preclusive effect of these decisions and settlement, the Consent Order granted Tyson's declaratory judgment claim while dismissing with prejudice the declaratory judgment claims of Kemp, Superior Seafoods, Inc., and Quality. The order provided that Tyson owns all right, title, and interest in and to the Marks. The Consent Order makes no mention of limitations on Tyson's right to use the Marks.[2] The Consent Order states that the only issues remaining were whether the use of the Marks on wild rice products infringed or diluted Tyson's rights.

On September 30, 2002, following a bench trial, this Court issued a judgment in favor of Kemp on the remaining issues of federal and state law trademark infringement and dilution. The Court found that Kemp's use of the Louis Kemp name in relation to his line of wild rice products did not either infringe or dilute the Marks acquired by Bumble Bee. Bumble Bee appealed from the common law trademark ruling.

---

[2] The Consent Order provides in relevant part:

> 7. Pursuant to the doctrine of res judicata, the Court finds that Tyson owns all right, title, and interest in and to the LOUIS KEMP Marks, and Tyson owns U.S. Trademark Registration Nos. 1,859,815 and 1,859,816 (for the mark LOUIS KEMP) and U.S. Trademark Registration Nos. 1,859,817 and 1,879,931 (for the mark LOUIS KEMP SEAFOOD CO.). Accordingly, the Court hereby grants judgment to Tyson on its claim for declaratory judgment (Am. Ans., Aff. Def. & Ctrcls., Ctrcl. I PP 32-36).

Wallace Aff. Ex. Z.

Bumble Bee subsequently introduced a line of smoked salmon under the LOUIS KEMP mark. While the appeal was pending, Kemp sought an injunction prohibiting the use of the LOUIS KEMP mark in relation to the salmon. On March 30, 2004, the Court issued an order denying Kemp's motion for summary injunction, relying in part on the language of the Consent Order. *Kemp v. Tysonfood Group, Inc.*, 2004 WL 741590 (D. Minn. Mar. 30, 2004). The Court explained that the Consent Order was "unambiguous and simply cannot be read to include the possibility that the scope of Tyson's marks continued to be limited to surimi-based products. If such a limitation was intended, it should have been included in the Consent Order." *Id.* at *5.

On January 27, 2005, plaintiffs filed a complaint against their former trial counsel, alleging negligence and breach of fiduciary duty. That case is pending in the District of Minnesota. *Superior Seafoods v. Hanft Fride, P.A.*, Civil No. 05-170 (DWF/FLN).

On February 23, 2005, the Eighth Circuit reversed the Court's judgment in favor of Kemp that was entered after the bench trial. The Eighth Circuit found that a likelihood of confusion exists between the Marks acquired by Bumble Bee and Kemp's use of the LOUIS KEMP trademark in connection with his line of wild rice products.

On June 20, 2006, plaintiffs filed this action, seeking to set aside the Consent Order. Plaintiffs allege fraud upon the Court or, in the alternative, mistake as a basis for their claim. Defendants have filed motions to dismiss.[3]

---

[3] The Court does not convert the motions to dismiss into motions for summary judgment, even though defendant attached copies of court orders and other parts of the public record. *See E.E.O.C. v. Indep. Sch. Dist. No. 834*, 430 F. Supp. 2d 901, 903 (D. Minn. 2006) (explaining

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, as the non-moving party. *See, e.g., Bhd. of Maint. of Way Employees. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). A motion to dismiss a complaint should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### II. DEFENDANTS' MOTIONS TO DISMISS

#### A. Timeliness Of This Action

Plaintiffs allege fraud upon the Court or, in the alternative, mistake as a basis for this Court to set aside the Consent Order. Defendants first argue that plaintiffs' action is time barred. Under Federal Rule of Civil Procedure 60(b), a party may move to set aside a final judgment or order on the basis of mistake, newly discovered evidence, and fraud. Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be brought within one year of the final judgment, but the Rule does not set a time limit for courts to entertain an independent action or to set aside a judgment for fraud upon the court. *Id.* Here, plaintiffs have filed an independent action, so their motion is not time barred under Rule

---

that a court may consider in a motion to dismiss "materials embraced by the pleadings and materials that are part of the public record").

60(b). Further, plaintiffs assert fraud upon the court, which is specifically excluded from the one-year deadline in Rule 60(b). As such, the Court concludes that the action is not time barred.

### B. Fraud on the Court

Defendants argue that the claim of fraud on the court should be dismissed because plaintiffs cannot show the extraordinary circumstances necessary to set aside the Consent Order on this basis. The Eighth Circuit has characterized fraud on the court as "a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976). Courts find fraud on the court only when the misconduct is "egregious" and "directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Id.* Fraud on the court must be supported by clear, unequivocal and convincing evidence. *Id.*

Plaintiffs allege that defendants "through their duly authorized counsel misrepresented to the Court (and to Plaintiffs and their counsel) the nature, contents and effect of the proposed consent judgment and their intentions in seeking it." (Am. Compl. ¶ 23.) First, plaintiffs allege that defendants misrepresented the Consent Order at the December 7, 2000 hearing. Specifically, plaintiffs allege that Horwitz falsely told the Court that Tyson was not seeking the right to use the Marks on all food products, and that the claim for declaratory judgment regarding the use of the Marks on non-surimi products

would survive after entry of the Consent Order. Second, plaintiffs allege that another lawyer for Tyson, Kahn, falsely suggested that the Consent Order would not enlarge Tyson's rights beyond what the Court had already found.

Defendants argue that plaintiffs and their counsel had ample time to study the various drafts of the consent order, and knew that the surimi limitation was a key issue. Defendants also assert that plaintiffs had the opportunity at oral argument to respond to Horowitz's assertions and correct any "ambiguity." In essence, defendants argue that these circumstances cannot amount to fraud on the court because plaintiffs were not prevented from fairly presenting their case to the Court.

Material misrepresentations to the Court by a lawyer can warrant a finding of fraud on the court. *See, e.g.*, *Southerland v. Irons*, 628 F.2d 978, 979-80 (6th Cir. 1980) (affirming finding of fraud on the court where an attorney never intended to perform his promise to the court to pay a medical assistance lien). Even if plaintiffs' lawyers could have exercised more diligence in ensuring that the Court was given an accurate description of the Consent Order, shortcomings of plaintiffs' counsel cannot excuse the actions alleged of defendant's counsel. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

The Court recognizes the high bar for success in cases seeking to set aside judgments for fraud on the court. On the other hand, the Court must construe the allegations in the complaint in the light most favorable to plaintiffs and cannot grant a motion to dismiss unless it appears "beyond doubt" that plaintiffs are not entitled to relief. *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir. 1994). The Court concludes that

plaintiffs' allegations are sufficient to survive a motion to dismiss. As such, defendants' motions to dismiss this claim are denied.

### C. Mistake

Plaintiffs argue in the alternative that the Consent Order should be set aside for mistake. In essence, plaintiffs argue that if defendants were not deliberately scheming to misrepresent the Consent Order then a mistake was made.

Because of the one-year deadline imposed by Rule 60(b), plaintiffs cannot under Rule 60(b) seek to set aside the Consent Order for mistake. Instead, plaintiffs brought an independent action alleging mistake. Parties may resort to an independent action only under exceptional circumstances. *See United States v. Beggerly*, 524 U.S. 38, 46 (1998); 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2868 (2d ed. 1995). "It is not a remedy for inadvertence or oversight by the losing party in the original action, nor will it lie on behalf of a party who was himself at fault." *Id*.

Defendants argue that plaintiffs are primarily responsible for any mistake that may have occurred. Defendants emphasize that plaintiffs were fully aware of the issue of the surimi limitation and plaintiffs failed to take any action to prevent the Consent Order from being signed on their behalf by their lawyers. Plaintiffs respond that they were reasonable to rely on the representations of the lawyers involved, and that the lawyers had no authority from Kemp to agree to the settlement.

The Eighth Circuit has set aside a settlement when an attorney lacked authority to agree to it. *See Surety Ins. Co. v. Williams*, 729 F.2d 581, 582 (8th Cir. 1984). In *Surety Insurance Co.*, defendants asserted that they were unaware that the district court was to enter a judgment against them, and that their attorney had acted contrary to their specific instructions in agreeing to such a judgment. *Id.* The Eighth Circuit held that "a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry." *Id.* at 582-83. However, the Eighth Circuit later held that the attorney must engage in "extreme misconduct" to justify setting aside a settlement on this basis. *Heim v. Comm'r*, 872 F.2d 245, 248-49 (8th Cir. 1989) (distinguishing *Surety Insurance Co.* and finding no fraud on the court when the attorney's actions were at most "most grossly negligent or without authority").

Here, plaintiffs allege that their lawyer, Kelly, signed the Consent Order even though it gave to Tyson valuable rights that Kemp did not authorize. This situation is not unlike that in *Surety Insurance Co. See* 729 F.2d at 582. Indeed, plaintiffs allege that Kelly "knew that his clients had not agreed to the consent judgment." (Am. Comp. ¶ 31.) While this case poses a relatively close question, the Court concludes that plaintiffs have pled facts that if proven true could justify setting aside the Consent Order for mistake. As such, defendants' motions to dismiss on this claim are denied.

### D. ConAgra Foods

Defendants argue that ConAgra Foods, Inc. is not a proper party to this action because it was never a party to the underlying litigation, never a party to the Consent

Order, and never an owner of the Marks. The only allegation against ConAgra Foods is that it acquired Bumble Bee Seafoods, but Bumble Bee Seafoods was later merged into ConAgra Grocery Products Company, L.L.C. As such, the Court grants the motion to dismiss with respect to defendant ConAgra Foods. ConAgra Foods is dismissed from this action.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants ConAgra Foods, Inc. and ConAgra Grocery Products Company, L.L.C.'s motion to dismiss [Docket No. 8] is **DENIED IN PART** and **GRANTED IN PART**. The motion is granted with respect to defendant ConAgra Foods, Inc., and denied in all other respects.

2. Defendant Tyson Foods, Inc.'s motion to dismiss [Docket No. 20] is **DENIED**.

DATED:   January 3, 2007                                                                                        s/ John R. Tunheim
at Minneapolis, Minnesota.                                                     JOHN R. TUNHEIM
                                                                                United States District Judge